United States District Court for the _Eastern District of North Carolina_

District of _North Carolina_

File Number _4/20-CV-230-FL_

_4:20-CV-230-FI_

_Daniel J Willis_ )
)  Notice of Appeal
)
_Jones County Board_ )
_of Elections, et al_

FILED

JUN 1 1 2021

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

Notice is hereby given that _Daniel J Willis_ (plaintiffs)
(defendants) in the above named case,* hereby appeal to the United States Court of Appeals for the
_4th_ Circuit _____ entered in this
action on the _11_ day of _June_, _____.

(s) _Daniel J Willis_

_105 Cherry St Trenton NC_
(Address)
Attorney for _DANIEL J Willis_
Address:
_105 Cherry St_
_Trenton, NC 28585_

* See Rule 3(c) for permissible ways of identifying appellants.

### APPEAL BUT NOT IN FORMA PAUPERIS

### GIVE ME LIBERTY OR GIVE ME DEATH

1. Pro se plaintiff alleges that errors affecting substantial rights may be considered on motion for new trial or an appeal though not raised in rial court if manifest injustice or miscarriage of justice has resulted, is invoked on case to case basis, but there must be sound, substantial manifestation, a strong, clear showing, that injustice or miscarriage of justice will result if the rule is not invoked. See, State v Meiers, Mo.412 S W 2d 478, 480. For there to be "errors" warranting reversal absent objection, there must be legal impropriety affecting the defendants [all to White] substantial rights, sufficiently grievous to justify notice by "viewing and reviewing" court and to convince it that, of itself, errors possessed clear capacity to bring about unjust result. See, State v Harris, A D 174 A 2d 645, 646, 70 N J Super 9. Therefore, the doctrine which encompasses those errors, committed by the defendants, on March 17, 1997, which are obvious and highly prejudicial, which affected the substantial rights of plaintiff Willis, and which, if uncorrected, could, should, and would be an affront to the integrity and reputation of judicial proceedings. See, U S v McCord, 166 U S App D C 1 509 F 2d 334, 341.

2. Pro se litigant alleges that the United States Court of Appeals, 4th Circuit, has decided an important question, 96-2066, [filed Mar 1997], of federal law in a way that it conflicts with the decision of 7:95-MC-17-F[filed Sept & Oct 1995], and another state court, that has not been, but should be, settled by this court, and where the defendants [herein] cannot show every specific instance in which they have been prejudiced. See, cases filed Apr 5, 2002, by Honorable Judge Malcolm J. Howard.

3. The court should be convinced that Willis' rights to a speedy appeal has been violated in this case. Although the remedy of dismissal is a severe consequence, it is the proper remedy for a denial of this right, so states the plaintiff [herein], once more and again. See, Strunk v United States, 412 U S 434, 93 S Ct 2260, 37 L Ed 2d 56 (1973).

4. The court should rule, and hold, with the plaintiff that he is entitled to relief, where the defendants, altogether, failed and refused, to acknowledge that the Town of Trenton had previously filed Case No. 7:95-MC-17-f[Sept & Oct 1995] app. 19 mos. prior to Case No. 96-2066 [March 1997], where this court should reverse and remand, against whom it is directed, the case to the District Court for the purpose of taking such additional evidence as may be necessary to make findings as to exactly what services would now

be in place were it not for intentional, intended, intent racial discrimination, and for the purpose of them devising appropriate remedies directed only to the proven effects of the constitutional violation and protection against future violations.

5. Plaintiff alleges that pro se litigant, herein, alleges that he, personally, "therefore is entitled......to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, all internal conflicts in it resolved favorably to him, the most favorable of possible alternative inferences from it drawn in his behalf, and finally to be given the benefit of all favorable legal theories invoked by evidence so considered.

6. Pro se plaintiff alleges that in this [past] matter being enforced by the defendants, while acting in conspiracy, and under color of law, altogether, and to give strength to, by adding their forces, emphasis or impressiveness to gain by force or compulsion, and to put in execution, and capable of being enforced by the denial of equal sewage services as to its "denial dilution" by the defendants, where plaintiff do, and did, request the court, from 1955 – 2020, to find segregation of inequality [denial of equal protection and due process], and positive acts of exacerbation, and aggravation in the "Denial of Due Process and Equal Protection Clause" that could, would, and should be found to be unconstitutional, wherefore, I ask the court to view, and/or, review [not cursory], the favorable evidence where the plaintiff, minorities, people of color, and all others similarly situated that were submitted contemporaneously with the events at issue. Therefore, no state or federal government may effectively abdicate its responsibilities by either ignoring them or by merely failing to discharge them whatever the motive maybe. See, City of Greensboro v Simkins, 246 F2d 425 [CA 4th Cir], affirming 149 F Supp 562 [DC MD NC]; Tate v Depot of Conservation, 133 Supp 53 [DC Ed Va], Aff'd, 231 F 2d 615 [Ca 4th Cir] which has fallen on deaf ears, and/or, has fallen on blind eyes.

7. Plaintiff alleges, however, no claimant is required to demonstrate by direct evidence a casual nexus between his or her relatively depressed socio-status and a lessening of their opportunity to participate effectively in the political process, "where the court could not have position itself more poorly." Whereas, the Supreme Court has stated that wealth as well as race renders a classification highly suspect and thus demanding of a more exacting judicial scrutiny. See, McDonald v Board of Elections Commissioner of Chicago, 394 U S 802, 807, 89 S Ct 1404, 221 Ed 2d 739 (1969).

8. Pro se litigant alleges that what was filed in the District Court that was frivolous, therefore, plaintiff is requesting said copies of said complaints, and where the District Court never, ever filed a pre-filing injunction, before Apr 5, 2002, aff'd, 50 F app'x 648 (4th Cir 2002), where Case #7:95-MC-17-F filed Oct 12, 1995, had denied such action. A pleading is "frivolous" when it is clearly insufficient on its face [where the District Court is requested to said evidence], and does not controvert the material points of the

opposite pleading, and is presumably interposed for more purposes of delay or to embarrass the opponent. Frivolous pleadings maybe amended to proper form, or ordered stricken, under federal and state rules of civil procedure [plaintiff's cases were dismissed from 1995 – 2021], therefore, the District Court, never, ever informed the pro se plaintiff, and/or, compel the plaintiff to file a new pleading which may be amended [1995 – 2021]. Permit the plaintiff to see said evidence.

9. Plaintiff alleges that as to Cases # 4:19-MC-1, 4:13-MC-2014-WL, Honorable Judge Malcolm J. Howard, [retired], never, ever, and/or, the District Court respond to said complaints, or any complaint filed under MC status. Plaintiff asks the court to view, and/or, review [not cursory], any an all complaints filed by the plaintiff which were frivolous pleadings as to embarrass the opponent[s], herein before, and herein after.

10. Plaintiff, further, alleges for there to be, and do claim that "plain error" warranting reversal absent objection, there is legal impropriety affecting defendant's substantial rights, sufficiently grievous to justify notice by viewing, and/or, reviewing [not cursory] court and to convince it that, or itself, error possessed clear capacity to bring about unjust result [E.D.N.C. Apr 5, 2002] aff'd, 50 F App'x 648 (4th Cir 2002). See, State v Harris, A.D. 174 A 2d 645, 646, 70 N.J. Super 9.

11. Plaintiff alleges that the court order filed in Case #4:20-CV-230-FL, "that this court has enjoined plaintiff "from filing any additional cases in this district [ See, Case # 7:95-MC-17-F filed June 3, 2021] which encompasses those errors which are obvious and highly prejudicial, which affect the substantial rights of the accused, and which, if uncorrected, would be an affront to the integrity and reputation of judicial proceedings. See, U.S. v McCord, 166 U.C. App D.C. 1, 509 F 2d 334, 341.

12. Plaintiff alleges that one rendered after argument and investigation, and when it is determined which party is in the right, as distinguished from a judgment rendered upon some preliminary or formal or merely technical or procedural point, or by default and without trial. A party whose case has been "dismissed, and/or, denied" without prejudice can bring the same suit again so long as the procedural errors are corrected (i.e. cured) in the later action. Where the court, based on the foregoing, the court dismisses the instant action on the basis of the court's pre-filing injunction dated Apr 5, 2002. See, Cases # 7:95-MC-17-F, appended hereto.

13. Plaintiff asks this court to view, and/or, review [not cursory], any and all exhibits appended hereto. The plaintiff has filed many, many, lawsuits against the Town of Trenton [in its MC position], concerning the Town of Trenton, challenging the at-large

election method allegedly used by the Town of Trenton, from its initial beginning, unto this very day.

14. The court has continued to result in two [2] pre-filing injunctions entered against him. First, this district court has enjoined plaintiff "from filing any additional cases in this district involving the Town of Trenton never, ever, and/or, [the former Mayor J. Leggett has deceased] without prior approval of the court. see, 4:96-CV-6-H4, 4:99-CV-159-H4, filed Apr 5, 2002, aff'd, 50 F App'x 648 [4th Cir 2002]. Second, the Fourth Circuit [Fourth Circuit, Richmond, Va.] has enjoined plaintiff "from filing pleadings in any pending lawsuit, action, proceeding, or matter in the United States District Court for the Eastern District of North Carolina against any person o entity in [forma pauperis] forma pauperis] without first obtaining leave of the court to so proceed. See, Willis v Town of Trenton, #96-2066 [4th Cir Mar 17, 1997]. Plaintiff states that Cases #4:20-CV-203-M and 4:20-CV-230-FL were paid for in cash, not the use of "forma pauperis." Plaintiff asks the court to view, and/or, review [not cursory] Case # 96-2066 [its heading]. Plaintiff has never, ever used an "exceptional history of frivolous filings and appeals" in the federal, for plaintiff is asking the court to produce said evidence.

15. On March 18, 2021, or about, plaintiff gave notice to the Clerk of Court that she "dis not" give plaintiff a process to serve "the Jones County Board of Elections," and filed a letter to show good cause for this failure within 14 days. Pursuant to Rule 4 [M]. plaintiff did file, or "at least it was his intentions o file a civil complaint against the J.C.B.O.E.

16. Aside from the Fifteenth [15th] Amendment, which guarantees the equal right to vote without regard to race, color, or previous condition of servitude [where no person of color has been elected or appointed as a member of the Trenton Town Council, as a delegate, herein], the basic federal prohibitions against discrimination in voting are (1) the Fourteenth [14th] Amendment, which prohibits intentional, intended, intent discrimination by "public officials," who uses the at-large method of elections, to elect its aldermen.

17. Pro se plaintiff cites 42-U.S.C. Section 10301 as relevant U.S. Code Section. Pro se plaintiff is not a lawyer in the State of North Carolina, or any other state, he has never, ever, attended a class filled with law students, for plaintiff intended or intends to reference 52 U S C Section 10301, the codified section of VRA that prohibits the denial or abridgement of the right to vote on account of race or color through voting qualifications or prerequisites, rather than 42 U S C Section 10301, which concerns congressional findings and declarations regarding the Water Resources Act of 1984.

18. Reconstruction – era statutes imposing civil and criminal penalties upon those who interfere with voting rights, and (3) the modern Voting Rights Act of 1957, 1960, 1964, and 1965 [amended in 1970, 1975, 1982, and 1992]. Of these statutory prohibitions, by far the most important is the Voting Rights Act of 1965, which prohibits literacy and other tests for voting, provides for the appointment of federal voter registrations, and examiners, requires federal approval of changes in voting in those jurisdictions that have a history of voting discrimination and low voter registration and turnout, and provides that voting practices that result in discrimination are unlawful whether or not they were enacted or are being maintained with a racially discriminatory purpose.

19. Democracy doesn't just happen!!! You have to stand up for it. Plaintiff alleges that the path to an undemocratic America that doesn't happen in one [1] bang, but in a series of steps. The Fifteenth [15th] Amendment prohibits purposeful discrimination in voting at all levels of the political process by federal, state and local officials on the bases of race, color, or previous condition of servitude. The amendment, in the words of the Supreme Court, "nullifies sophisticated as well as simple minded modes of discrimination," and makes unlawful "onerous procedural requirements which effectively handicap exercise of the franchise by the [people of color] Colored Race." While the Fifteenth [15th] Amendment was enacted as a limitation on public officials, the acts of private individuals have been held unconstitutional under it where they perpetuate or act as a substitute for official discrimination.

20. Remember, plaintiff is eighty [86] six years old [9-9-1934], born in Trenton, North Carolina, under segregation, where the requisite [demand] in writing, or formal request or requirement, filed on April 27, 2021, where plaintiff did not move to proceed in forma pauperis, and plaintiff failed to respond In naming originally the Town of Trenton, simply and solely, because the court would never, ever, respond. There is nothing in the "orders" pursuant to Rule 4 [M]. however, the later corrective document [DE 15] and second amended complaint [DE 20] required leave of court to be filed, and plaintiff did not so move [nor did the court remind him], and, therefore, these filings did not amend his pleadings.

21. The court never, ever, stated Rule 15 (a) allows a party to amend its pleadings as a matter of course, if the pleading is one to which a responsive pleading is required, and where plaintiff has never, ever been a student of law, and plaintiff did not so move and therefore, those things did not amend the pleadings, and was not told by the District Court. Therefore, plaintiff's commencement of this action without prior approval of the court, who has never, ever responded, and where this action without prior approval of the court, who has never, ever responded, and where this action without prior approval of the court was never, ever in violation of the court's pre-filing injunction. In addition, the court finds no good cause [where no persons of color has never, ever been elected

or appointed to the Trenton Town Council as Town Aldermen] for allowing filing of the instant action, in light of plaintiff's recent additional attempts to commence actions involving the Town of Trenton, and the legal deficiencies in [Pro Se] plaintiff's complaint, where the District Court, <u>never</u>, <u>ever</u> addressed such to the plaintiff, as detailed further herein.

22. Plaintiff alleges that although against government policy, discrimination still occurs because some individuals do not follow the law. Although the government has enacted laws to prevent state and local government from engaging in intentional, intended, intent discrimination still occurs not only because some people refuse to follow the law, like defendants, herein, but also because, in many instances, discrimination is difficult to prove. Theoretically, the Fourteenth [14th] Amendment's Equal Protection Clause prohibits state and local governments from engaging in intentional, intended, intent discrimination. On the court's own initiative, the court "<u>failed</u> and <u>refused</u>" to <u>view</u>, and/or, <u>review</u> [not cursory] the instant action for compliance, with its exhibits appended hereto, with the court's pre-filing injunction, and where the court "only viewed what was good for the defendants, herein, and it did "not" effectively amend the complaint [DE 20] required leave of court to be filed.

23. The plaintiff, herein, did file or attempted to file the following as follows, or at least it was his intentions:
    The plaintiff, herein, "is therefore entitled......to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, whether plaintiff is pro se or not, and all internal conflicts in it resolved favorably to him, the most favorable of possible alternative conflicts in it resolved favorably to him, the most favorable of possible alternative inferences from it drawn in his behalf; and, finally, to be given the benefit of all favorable legal theories, which was not done in this case, invoked by evidence so considered." See, <u>Charbonnages de France v Smith</u>, 597 F 2d 406, 414 (4th Cir 1979); See also, <u>Chastain v Litton Systems, Inc.</u>, 694 F 2d 1334 (1983); <u>Smith v University of North Carolina</u>, 632 F 2d 316, 338 [4th Cir 1980]. Plaintiff therefore, stated the facts in Case #<u>4:20-CV-230-FL</u> in accordance with these principles, "<u>which were not dismissed or denied out of benevolence but malice</u>." Therefore, no state or federal government, including the District Court may effectively abdicate its responsibilities by either ignoring them or by merely failing to discharge them whatever the motive maybe, for plaintiff has filed <u>many</u>, <u>many</u>, <u>many</u> lawsuits, under MC against said defendants, to no avail, from on/or about 1960 – 2017, with no response from the District Court. See, <u>City of Greensboro v Simkins</u>, 246 F 2d 425 [C.A. 4th Cir], affirming 149 F Supp 53 [DC Ed Va], aff'd, 231 [21] 615 [Ca 4th Cir] which has fallen on deaf ears.

24. In <u>Roseboro v Garrson</u>, 528 F 2d 309 [4th Cir 1975], where these Cases # <u>20-CV-230-FL</u> and Cases # <u>20-CV-203-M</u> should have held that a District Court must advise a pro se litigant of his rights under the summary judgment rule, which the District Court <u>failed</u>, and <u>refused</u> to do <u>many</u>, <u>many</u>, <u>many</u> times, and to file opposing affidavits to defeat a

defendant's [or court's] motion, and Congress provided that a violation of plaintiff's Civil
, either the discriminatory purpose or the discriminatory result of a challenged practice,
and where the plaintiff's Civil Rights Act of 1965 abolished tests or devises which were
used then and now, to disfranchise racial minorities, "at least in theory."

25. Plaintiff alleges that a complaint to a higher tribunal of an error or injustice committed
by this District Court in which the error or injustice is sought to be corrected or
reversed. See, Board of Ed of Cleveland City School Dist v Cuyahoga County Bd of
Revision, 34 Ohio St. 2d 231, 298 N.E. 2d 125, 128; See also, Exhibits appended hereto.

1. There has never, ever been a person of color, elected or appointed to the Trenton
Town Council, as an alderman.
2. There has never, ever been sidewalks, curbs, gutters, or storm drainages in
neighborhoods of color.
3. There are no persons of color on the Jones County School Board.
4. There has never, ever been an "Infructive plan," simply and solely, for an
African-American Community.
5. African-Americans pay their fare share of Ad Valorem Taxes [the more common ad
valorem tax, is that imposed by states, counties, and cities on real estate.
6. Based on information and belief, there has never, ever been a person of color
"arrested" for not paying his or her fair share of ad valorem tax.
7. There are no principals or superintendents on the school board.
8. Persons of color were never, ever appreciated in the Town of Trenton [See, Exhibits
# F appended hereto].

26. The Honorable Judge Malcolm J. Howard or any other judge has never, ever issued a
pre-filing injunction in this and/or, any other action since Sept 1995 for compliance with
the court's pre-filing injunction. See, Case # 7:95-MC-F, filed Oct 12, 1995, appended
hereto.

27. Plaintiff alleges that while single member districts are the most commonly used
alternative to at-large elections, they do not always provide an adequate remedy. The
minority population is "not" so dispersed that it is possible to construct districts in which
the minority is a majority of the population. Under the circumstances, other election
procedures, such as limited or cumulative voting, may provide a more complete and full
remedy for vote dilution.

28. Plaintiff alleges that the amendment of Section 23 accelerated the pace of voting rights
litigation. It has brought about a general decline in at-large elections and an increased
use of district voting. District voting in turn "will" facilitate political participation and
office holding, and use of 58 U.S.C. Section 10301.

29. Plaintiff alleges, further, that despite the undeniable progress, minorities clearly have not yet achieved equality of political participation, as measured by office – holding and voter registration and turnout. Nationally, African-Americans comprise a small percent of eligible voters in the Town of Trenton, who has <u>never</u>, <u>ever</u> had a person on the Town Board as Town Alderman, from its beginning, unto now, but no African-Americans in "elected or appointed" offices. The rate of office-holding [in the Town of Trenton or its county-wide courthouse] of other racial minorities is similarly low. Registration and turnout statistics, which are depressed for all voters, also show racial disparities.

30. Why would a "law-suit" filed in the same manner as Case #<u>4:20-CV-230-FL</u>, be considered as "frivolous," in addition, the court has "always" found no good cause for allowing filing of the instant action, in light of plaintiff's recent additional attempts to commence actions involving the Town of Trenton, its "new" mayor, and the legal deficiencies [so states the District Court] in plaintiff's complaint[s], as detailed, further, hereinabove.

31. WHEREFORE, plaintiff commenced these actions without approval of the court, who has <u>never</u>, <u>ever</u> responded to plaintiff's case[s] was in violation of the court's pre-filing injunction, "which was <u>never</u>, <u>ever</u> issued." In addition, the courts [District Courts], finds no good cause for allowing filing of the instant action, in light of plaintiff's recent additional attempts [where plaintiff did "file" an affidavit requesting permission to file said action[s], therein] to commence action[s] involving the Town of Trenton, and where the legal deficiencies in plaintiff's complaint[s], "are proper and legal," in sum, the court DISMISSES this instant action on the basis of the court's pre-filing injunction, if any, and where the plaintiff has been litigating <u>in forma pauperis</u>, and in so alleging in previous orders entered herein [when, where, and who] for failure to state a claim upon which relief can be granted, and plaintiff continues to state in dismissing [instead of reissuing the claims against the Jones County Board of Elections, according to Summary Judgment Rules] the claims against the defendant Jones County Board of Elections pursuant to "Rule 4[M], whereas, the undersigned entered an order [Case # 7:95-MC-17-F] to show cause directing Daniel Johnson Willis, if any there be, why this court [under Honorable James C. Fox, deceased, filed Oct 12, 1995] should not enter a pre-filing injunction [where no other Judge or court has <u>never</u>, <u>ever</u> filed such a pre-filing injunction issued to the plaintiff, herein], requiring the plaintiff to obtain leave of court before filing any future actions.

32. Plaintiff alleges that "he" filed said affidavits, "begging" the courts for permission to file said suits, which contained sufficient factual matter, and should have been accepted as true, to "state a claim to relief that is/or plausible on its face[s]." See, <u>Ascroft v Iqbal</u>, 556 U.S. 662, 678 (2009) [quoting <u>Bell Atl Corp v Twombly</u>, 550 U S 544, 570 (2007). These factual allegations [See, exhibits appended hereto] were enough to raise a right to relief above the speculative level. Twombly, 550 U S at 555. In evaluating whether a

claim has previously, and/or, now been stated, the court <u>failed</u>, and/or, <u>refused</u> to <u>view</u> or <u>review</u> [not cursory] the complaint, and/or, accept[s] all well pled, pro se litigants' facts as true, and plaintiff did construe these facts in the light most favorable to the plaintiff, and do consider conclusions, elements of a cause of action and further factual enhancement[s] and warranted inferences, reasonable conclusions, and/or, arguments," and plaintiff has standing under Rule 12 (b) (1), whether the court "DISMISSES or DENIES" said actions or not, "the court is in error," under Rule 12 (b) (6), and other potential grounds for dismissal under Rule 12 (b) (2) [exhibits omitted].

33. Plaintiff asks this Court of Appeals to drop defendant NCSBE's immunity under the Eleventh [11th] Amendment, and where plaintiff lacks standing, under Rule 12 (b) (1), and in light of "Dismissal, and/or, Denial" under Rule 12 (b) (6), where the court has reached other potential grounds [as previously stated in other cases] for dismissal, and/or, denial under Rule 12 (b) (2).

34. The court <u>failed</u> and <u>refused</u> to accept plaintiff as a pro se litigant, and the rules of the District Court, where the court refuses to credit in its analysis, where Section 2 prohibits local governments, such as the Town of Trenton, and the Jones County Board of Elections and the North Carolina State Board of Elections......from adopting practices, procedures tat "dilutes, and/or, attempts to dilute" the plaintiff's voting strength, as complained of, in "past and present actions."

35. Plaintiff, once more and again, asks this court to rely on pro se litigants' conclusory statements and its own speculation in order to allow plaintiff to proceed with this litigation. <u>Iqbal</u>, 556 U S at 678; <u>Twombly</u>, 550 U S at 555 & 570, and where this court should grant plaintiff's claim upon which relief can be granted.

## HONORABLE JUDGE MALCOLM J HOWARD'S COURT

1. The Howard court <u>failed</u>, and <u>refused</u> to impose appropriate sanctions [where said court order filed Apr 5, 2002] as to a pre-filing injunction in the course of any litigant's conduct in any matter before the court, although, it screamed from "High Hell" where treasonable words set down in writing amount to overt acts of treason, and/or, reduced to nothing, to make void, or of no effect, for some reason other than a conviction of its justice, which sways judgment and renders the court[s] unable to exercise its functions impartially in particular case[s] filed, herein, by the plaintiff, and to dream of the twenty [20] lawsuits filed in Case # <u>7:95-MC-17-F [Sept & Oct 1995]</u> that got away from him, and he has <u>never, ever</u> stopped trying, for playing the "race card," had become hesitate to impose appropriate sanctions, when, and if the need ever arose, for the District Court Judges will <u>never, ever</u>

outfox Judge Howard [retired]." For he who seeks equity must do equity" [this expression means that the party asking the aid of a court for equitable relief must stand in a conscientious relation toward his adversary and the transaction from which his claim arises must be fair and just and the relief must not be harsh and oppressive upon the defendant[s]], See, Jacklich v Baer, 57 Cal App 2d 684, 135 P 2d 179, 184. It is in pursuance of this maxim that equity enforces the right of Town of Trenton's council, as aldermen, in equity to a settlement. See, Bates v Dana, 345 Mo 311, 133 S W 2d 326, 329.

2. In court order, filed Apr 5, 2002, on page 3, paragraph 1, the court stated as follows: "As background, the court notes that since 1990 Plaintiff Willis has filed a total of 38 actions against various Trenton Defendants." [The court had no actions in its background].

3. As background, Judge Howard was thinking about the actions filed in Case #7:95-MISC-17-F on Sept 21, and Oct 12, 1995, "that got away from him," and filed another case without justice [a sign of old age], and racial jurisdiction, Apr 5, 2002, and today the federal judges would never, ever go against said judge, right or wrong. What a damn shame!!!

4. All of the actions were dismissed by Judge Howard "and his cronies" and considered "moot," and where no, no, court would look into, previously. The District Court states that the actions were dismissed for lack of merit or because plaintiff failed to pursue their claims [from 1997 – 2002] Judge Howard has played "all" of us, for "damn" fools [smile]. [freedom of speech].

5. Despite the undeniable progress, minorities clearly have not yet achieved equality of political participation, as measured by office-holding and voter registration and turnout. Nationally, Blacks comprise 11 percent of eligible voters but only 1.6 percent of elected offices. The race of office-holding of other racial minorities is similarly low. Registration and turnout statistics, which are depressed for all voters, also show racial disparities, and "WITH LIBERTY AND JUSTICE FOR ALL."

Plaintiff asks this court to view, and/or, review [not cursory] any and all exhibits appended hereto. Filed June 11, 2021.

Respectfully submitted,

Daniel J. Willis
105 Cherry Street
Trenton, N. C. 28585
(252)448-6091
Pro Se Litigant

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

FILED

APR  ·5 2002

DAVID W. DANIEL, CLERK
US DISTRICT COURT
E. DIST. N. CAROLINA

| | | |
|---|---|---|
| D. JOHNSON WILLIS, LIONEL MEADOWS, ALBERT L. MEADOWS, FURNEY MUNDINE,<br>　　　　Plaintiffs and<br>　　　　Counter-defendants,<br><br>　　　　　　v.<br><br>TOWN OF TRENTON, NORTH CAROLINA, JOFFREE T. LEGGETT, Town Mayor, EDWARD EUBANKS, WILLARD O. LEWIS, CHARLES JONES, C. GLENN SPIVEY, McDAVID & ASSOCIATES, RICHARD MOORE, Engineer For the Town of Trenton, North Carolina,<br><br>　　　　Defendants and<br>　　　　Counter-claimants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 4:96-CV-6-H(4) |

| | | |
|---|---|---|
| D. J. WILLIS, ALBERT H. BROWN, DORA MILLER, BAYRON GREEN, LENA BROWN, and EARNSTINE BROWN,<br><br>　　　　Plaintiffs,<br><br>　　　　　　v.<br><br>MAYOR AND COUNCIL OF TOWN OF TRENTON, NORTH CAROLINA, SYLVIA A. WILLIS, CHARLES JONES, EDWARD EUBANKS, WILLARD O. LEWIS, C. GLENN SPIVEY, JONES COUNTY BOARD OF ELECTIONS, RICHARD C. TYNDALL, JR., JAMES BENDER, JR., WILL H. BROCK, GAIL LEE, and their successors,<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 4:99-CV-116-H(4) |

D. JOHNSON WILLIS, ALBERT H.    )
BROWN, EARNSTINE BROWN,         )
NELSON DOVE, DORA MILLER,       )
DEBRA CURETON, ANITA B.         )
BROWN, PHYLISS BROWN, and all   )
others similarly situated,      )
                                )
         Plaintiffs,            )
                                )
             v.                 )          No. 4:01-CV-13-H(4)
                                )
TOWN OF TRENTON, NORTH          )
CAROLINA, SYLVIA A. WILLIS,     )
Mayor, COUNCIL OF TRENTON,      )
NORTH CAROLINA, CHARLES         )
JONES, EDWARD EUBANKS,          )
WILLARD O. LEWIS, C. GLENN      )
SPIVEY, as defendants and       )
their successors,               )
                                )
         Defendants.            )
―――――――――――――――――――――           )
                                )
D. JOHNSON WILLIS, ANITA B.     )
BROWN, HANNAH C. GRAY,          )
EARNSTINE BROWN, ALBERT H.      )
BROWN, NELSON DOVE, and         )
LIONEL MEADOWS,                 )
                                )
         Plaintiffs,            )
                                )
             v.                 )
                                )
TOWN OF TRENTON, N.C., SYLVIA   )
A WILLIS, Mayor, CHARLES        )
JONES, Town Board Member,       )
EDWARD EUBANKS, Town Board      )
Member, WILLARD ODELL LEWIS,    )          No. 4:01-CV-133-H(4)
Town Board Member, GLENN        )
SPIVEY, Town Clerk, THE JONES   )
COUNTY BOARD OF ELECTIONS,      )
WILL H. BROCK, Chairman,        )
Board of Elections, GAIL LEE,   )
Director, Board of Elections,   )
SUSAN CAMARET, Secretary,       )
Board of Elections, MICHAEL     )
JENKINS, Member, Board of       )
Elections and/or their          )
successors,                     )
             Defendants.        )

2

Case 4:20-cv-00230-FL   Document 33   Filed 06/11/21   Page 13 of 35

```
                                    )
D. JOHNSON WILLIS,                  )
                                    )
        Plaintiff,                  )
                                    )
            v.                      )
                                    )
JOFFREE T. LEGGETT, Former          )
Mayor of Trenton, North             )
Carolina, VETERANS                  )
ADMINISTRATION FOR THE COUNTY       )
OF JONES, JONES COUNTY, NORTH       )
CAROLINA, TOWN OF TRENTON,          )      No. 4:01-CV-159-H(4)
NORTH CAROLINA, CHARLES             )
JONES, as Town Board Member,        )
EDWARD EUBANKS, as Town Board       )
Member, ODELL LEWIS, as Town        )
Board Member, and GLENN             )
SPIVEY, as Town Clerk; and/or       )
Town Board Members and Town         )
Clerk's Successors,                 )
                                    )
        Defendants.                 )
                                    )
```

## ORDER

This matter is before the court on its own motion.

As background, the court notes that since 1990 plaintiff Willis has filed a total of 38 actions against various Trenton defendants. With the exception of the five above-captioned cases, the actions have all been dismissed for lack of merit or because plaintiffs failed to pursue their claims. Invariably, plaintiff Willis has been the lead plaintiff in all these cases joined with various co-plaintiffs who have had little or no participation in the cases. The court has expressed concern on numerous occasions that Willis, who does not have a license to practice law in the

3

State of North Carolina or any other state, has been representing
his pro se co-plaintiffs in violation of the laws of the State of
North Carolina.  The court has repeatedly admonished plaintiff
Willis that he did not have the authority to act on behalf of any
other pro se party and directed Willis to cease his unlawful
practice of law.

In the five above-captioned cases, Willis is again the lead
plaintiff.  By order dated February 21, 2002, the court ordered
Willis, along with thirteen other pro se plaintiffs, to appear
before the court for a pretrial conference.  The day before the
scheduled pretrial conference, Willis filed motions to dismiss four
of the five cases "without prejudice."  The motions applied  only
to Willis and, in accordance with Rule 41 of the Federal Rules of
Civil Procedure, dismissal was not automatic as defendants had
filed responsive pleadings.  The court further notes that the
defendants have spent large amounts of time and money in defending
these lawsuits, while plaintiffs have exhibited little interest in
complying with discovery requests or rules of this court relating
to trial preparation.

On the day of the scheduled conference, none of the pro
se plaintiffs appeared before the court as ordered or contacted the
court to show cause why they could not appear.  Plaintiffs'
disregard of a specific order of a United States court is
inexcusable.  The United States District Court is a forum supported

4

*Exhibit # 22*



**NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE**
4805 MT. HOPE DRIVE • BALTIMORE, MD 21215-3297 • (410) 358-8900

**KWEISI MFUME**
President & Chief Executive Officer

July 26, 2004

Mr. Daniel Johnson Willis, Chairman
Jones County Improvement Association, Inc.
P. O. Box 397
Trenton, NC 28585

Dear Mr. Willis:

I am in receipt of your letter regarding the improvements you and your Association are looking to make in and around Trenton. Please know that, while I regret to learn of the current circumstances, it is always extremely heartening to learn about the efforts of concerned and active citizens like you, who seek to improve the world around us all.

Since this is a local issue, I have taken the liberty of forwarding a copy of your correspondence to Mr. Melvin "Skip" Alston, President of the North Carolina State Conference of NAACP Branches, for his review. It is my recommendation that you contact Mr. Alston in reference to this matter. He can be reached in writing at P. O. Box 20547, Greensboro, NC 27420, or by telephone at (336) 275-0851.

It is my most genuine hope that you obtain the assistance you seek, and I thank you for contacting the National Office of the NAACP.

Sincerely,

Kweisi Mfume
President and CEO

KM/crm

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 7:95 misc 17

IN RE:
DANIEL JOHNSON WILLIS

## ORDER TO SHOW CAUSE

TO:   Daniel Johnson Willis
      Post Office Box 397
      Trenton, N.C.   28585

You hereby are ORDERED to show cause, if any there be, why this court should not issue a permanent injunction against you requiring that you undergo a pre-filing review of any pleading you seek to file in this district after the date of entry of such injunction.  You shall file such response as you deem appropriate, accompanied by such documentation as is necessary, in compliance with this ORDER TO SHOW CAUSE on or before October 10, 1995.  Your failure to timely comply with this ORDER TO SHOW CAUSE will be deemed an admission that no such cause exists, and an order imposing a permanent injunction will be entered against you.

In support of this order, the court relates the following:

Beginning in 1990, Daniel Johnson Willis painstakingly has proved his penchant for producing prolific pleadings, and persists to the present in propounding a plethora of petty paperwritings prepared primarily to pester public servants.  He has

~~He filed more than 20 lawsuits during that period of time against various state, county and local officials. These lawsuits, without exception, have been vexatious, often frivolous and meritless.~~

The Fourth Circuit Court of Appeals has noted that it is well-established in this circuit that a district court may establish a system of "pre-filing review of complaints brought by prisoners with a history of litigiousness." Flint v. Haynes, 651 F.2d 970, 974 (4th Cir. 1981). See also Graham v. Riddle, 554 F.2d 133, 134-35 (4th Cir. 1977) (district court has power to control litigiousness of individuals who choose to abuse the in forma pauperis system through a pre-filing review system under discretionary authority implicit in 28 U.S.C. § 1915(d)); Abdul-Akbar v. Watson, 901 F.2d 329, 333 (3d Cir. 1990) ("When a district court is confronted with a pattern of conduct from which it can only conclude that a litigant is intentionally abusing the judicial process and will continue to do so unless restrained, we believe it is entitled to resort to its power of injunction. . . to protect its process").

~~This court's experience with Mr. Willis over the past few years leads to the inescapable conclusion that He intentionally has abused the in forma pauperis system in this district by filing duplicitous, frivolous lawsuits and has demonstrated his intent to continue to do so as long as he is permitted.~~ (Willis has never seen or filed a Complaint in Judge Fox's Court

In light of the foregoing, then, Willis is ORDERED TO SHOW CAUSE why the following Permanent Injunction should not issue:

2

* * * * *

PROPOSED PERMANENT INJUNCTION:

DANIEL JOHNSON WILLIS is hereby permanently enjoined from commencing, filing, or attempting to initiate any new lawsuit, action, proceeding, or matter in this federal district against any person or entity without first obtaining leave of that court to do so. In seeking such leave, Willis shall comply with each of the following requirements:

1.    He shall file a Motion for Leave to File Civil Action, attaching to said motion a copy of his proposed complaint;

2.    The motion shall be supported by plaintiff's affidavit, which shall contain, in concise form, the following information:

    a.  the names of all proposed defendants;
    b.  the primary factual allegations upon which the claim is based;
    c.  the legal basis for the claim;
    d.  whether he previously has litigated the claim in any administrative forum or court to any degree;
    e.  whether he has ever sued the named defendants in any other civil case; and
    f.  if he previously has sued any defendant, indicate the case, caption, court, date, and outcome of said case, along with filed copies of the documents purporting to commence such previous actions and certified records of the dispositions of those actions;

3.   Attached to plaintiff's motion and affidavit shall be a copy of this injunction.

Upon the filing of plaintiff's Motion for Leave to File Civil Action which satisfies the above requirements, the court will

3

assess the Motion, proposed Complaint, and Affidavit to determine whether the pleadings state a claim as a matter of law. If a claim is stated, plaintiff will be granted leave to proceed with the proposed action. If not, the motion will summarily be denied.

If plaintiff's Motion, Affidavit, and filings fail to satisfy the above requirements in any manner, the Motion will not be considered at all. In addition, should plaintiff commit any of the following acts, he may, at a minimum, be found in contempt of court, punished accordingly and his case dismissed if leave to proceed has been granted:

    a. Make a false affidavit in support of a Motion for Leave to File Civil Action;
    b. Fail to file an affidavit in support of a Motion for Leave to File Civil Action;
    c. Attempt to commence a civil action without first filing a Motion for Leave to File Civil Action; and
    d. Disobey any other provisions of this order.

Upon presentation by the plaintiff of a Motion for Leave to File Civil Action, the Clerk of Court shall place the matter upon the Miscellaneous docket and assign it to a judge on the normal rotation basis.

Finally, nothing in this order shall be construed as precluding plaintiff's ability to defend himself in any action brought against him, civil or criminal. Nor shall plaintiff be precluded from filing a petition for writ of habeas corpus, provided, however, the relief sought in any such petition on its face clearly concerns only the legality of a conviction and continued incarceration.

4

The Clerk of Court is DIRECTED to distribute copies of this order and injunction to all judges in this district.

*  *  *  *  *

(end of Proposed Permanent Injunction)

After receiving and reviewing Mr. Willis' Response to the instant Order to Show Cause, the court will notice a hearing thereon, if it deems necessary. If not, the Court will rule on the record. Again, Mr. Willis is cautioned that his failure to timely respond fully to this order will result in entry of the above-quoted Permanent Injunction. Mr. Willis is advised to seek the advice of counsel in relation to this matter.

SO ORDERED.

This the 2?th day of September, 1995.

JAMES C. FOX
Chief United States
District Judge

I certify the foregoing to be a true and correct copy of the original.
David W. Daniel, Clerk
United States District Court
Eastern District of North Carolina

By _____
                    Deputy Clerk

5

EXHIBIT #

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

OCT 12 '95

No. 7:95-HC-17-F

CIVIL

IN RE:

DANIEL JOHNSON WILLIS

O R D E R

On September 21, 1995, the undersigned entered an Order to Show Cause directing Daniel Johnson Willis to show cause, if any there be, why this court should not enter a pre-filing injunction, requiring him to obtain leave of court before filing any future civil actions, except a properly pled habeas action. Mr. Willis was ordered to show cause on or before October 10, 1995.

On September 27, 1995, Mr. Willis filed a response to the court's Order to Show Cause, and the court set a hearing on its Order to Show Cause for October 25, 1995. In preparation for that hearing, the undersigned obtained from the Clerk of Court a detailed record of the 20 cases Mr. Willis had filed in this court since 1990. In reviewing that record, the court discovered that Mr. Willis had paid the full $120.00 filing fee in each of the cases he brought in this district. Thus, the court was in error in its earlier belief that Mr. Willis had been litigating in forma pauperis, and in so stating in previous orders entered herein.

Because the court was mistaken in its premise for issuing the Order to Show Cause and Notice of Hearing thereon, it is therefore ORDERED that this court's orders of September 21, 1995,

and October 10, 1995, as well as the October 10th Notice of Hearing, are WITHDRAWN as improvidently entered. The Clerk of Court is DIRECTED to distribute a Notice cancelling the October 25th hearing.

Mr. Willis is advised that the court no longer is considering entry of a pre-filing injunction, because it now understands that he has not, in fact, been abusing the opportunity to litigate without paying the required filing fee. He further is advised that he, like every other litigant who files an action in this court, is bound to abide by the Federal Rules of Civil Procedure and the Local Rules of the Eastern District of North Carolina. Specifically, he is directed to Rule 11, Fed. R. Civ. P., which provides that the court may impose sanctions for violation of that Rule.

Rule 11

\* \* \* \*

(b) Representations to Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, --

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

2

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

The court will not hesitate to impose appropriate sanctions should a violation of Rule 11 occur in the course of any litigant's conduct in any matter before this court.

SO ORDERED.

This 17th day of October, 1995.

JAMES C. FOX
United States District Judge

I certify the foregoing to be a true and correct
copy of the original
David W. Daniel, Clerk
United States District Court
Eastern District of North Carolina
By _____
Deputy Clerk

3

JANUARY 12, 1992

THE DAILY

COVERING COASTAL JACKSONVILLE, N.C.

SUNDAY

# Black activist wins a battle to buy graves

## Cemetery association is disputed in Trenton

BY MISI C. LEE
Daily News Staff

TRENTON — After more than six years and one lawsuit, black activist Johnson Willis of Trenton has been allowed to purchase two plots in the town cemetery.

"There are no blacks in there," Willis said. "I am the first to buy land out there."

Willis was allowed to purchase two plots in the cemetery for $150 each.

Willis filed a lawsuit last year in Jones County District Court alleging Trenton's public cemetery excluded blacks and other minorities. The town cemetery is managed by Trenton Memorial Association.

Willis said the cemetery actually is owned by the town and, therefore, must be available to all citizens regardless of race or color.

"The IRS and the Secretary of State never heard of it," Willis said Friday, referring to documents he got from those agencies.

"That's nothing but a dummy organization to keep blacks out. You'll be surprised. I have relatives born here that always thought the cemetery belonged to an organization, and the town. When I told them it belonged to the town, they almost died," he said.

Town Clerk Glenn Spivey is a member of the Trenton Memorial Association. People who want to

**SEE GRAVES/3A**

### 1A

must
the of
assure
its in
r as a
al As-
if the
as a
rk as
ation
t has
uried
de to
said.
ually
lot to
k me
have
lig a
driv?
members
veral

years, they finally had it moved."

Willis was elated Friday as he recalled the six-year history of his attempt to desegregate the cemetery.

"One time, they told me you had to join the Trenton Memorial Association," Willis said. "One time they told me it was $1,250 per plot. One time Fred Foscue told me they didn't have any vacancies."

Foscue said he does not remember telling Willis there was no vacancy.

Former Trenton Mayor Delbert Doster, who served from 1989 to 1991, questioned the authority of the Trenton Memorial Association after he was elected. He said he was chided by board members.

"I was told not to bring it up or

discuss it," Doster said. "When I asked why, they said because blacks would want to be buried there. That's why I didn't get re-elected. I was turning over the honey barrel."

Willis said he plans to drop the discrimination suit against the town of Trenton, but he will pursue a lawsuit against Trenton Memorial Association and its officers.

He will ask that the town open up some adjoining land intended for expansion of the cemetery. That land was purchased by the town for use once the first cemetery was filled. Spivey rents the

land for $1 a year for use as a corn field.

"I'm going to give them time to act first," Willis said. "If they don't act on it, I'm going to sue."

Willis said he did not get the plots he wanted, which prompted the second suit. He requested lots in the land now being used as a cornfield.

"I wanted to be buried right behind Spivey's house," Willis said. "I wanted a location as close to his house as legally possible. When I'm gone, I want him to remember me. When he steps out his back door, I want him to see me."

EXHIBIT # 206

*Exhibit # 7*

## External Discrimination Complaint Form

## (Title VI/Nondiscrimination and ADA/Section 504 Complaints)

| Name<br><br>Daniel Johnson Willis | Phone<br><br>252-448-6091 | Name of Person(s) That Discriminated Against You<br>1. Town of Trenton, NC<br>2. The Town Board of Trenton |
|---|---|---|

| Address<br>P. O. Box 397<br>105 Cherry Street<br><br>City, State, Zip<br>Trenton, NC 28585 | Location and Position of Person (If Known)<br><br><br><br>City, State, Zip |
|---|---|

| Discrimination Because of: | ☒ Race ☐ Color ☐ National Origin ☐ Sex<br><br>☐ Age ☐ Disability ☐ Retaliation | Date of Alleged Incident<br><br>On-going |
|---|---|---|

Explain As Briefly And Clearly As Possible What Happened And How You Were Discriminated Against. Indicate Who Was Involved. Be Sure To Include How Other Persons Were Treated Differently Than You. Also Attach Any Written Material Pertaining To Your Case.

1. A history of discrimination
2. Annexation
3. Vote dilution
4. Lack of responsiveness by elected officials to the needs of the minority community and a discriminatory or irrational policy underlying the use of the challenged practice.
5. The extent to which minorities have been elected to office, whereas, minorities are entitled to a proportional, or equal, opportunity to elected candidates of their choice.
6. The right to participate equally in the political process
7. At - large elections - voting as a bloc
8. Majority vote requirement dilute minority voting strength; see, Delma Dove vs. Ron Metts, Clerk of Court, Jones County, on or about 1964, Trenton, North Carolina
9. Anti - single shot laws
10. Jurisdiction - racial - as to redistricting process
11. Polarization
12. Despite the deniable progress, minorities clearly [in Trenton, Jones County, North Carolina] have not yet achieved equality of political participation, as measured by office - holding and voter registration and turnout.

| Signature | Date<br><br>July 6, 2011 |
|---|---|

*Exhibit # 8*

## External Discrimination Complaint Form

## (Title VI/Nondiscrimination and ADA/Section 504 Complaints)

| Name<br>**Daniel Johnson Willis** | Phone<br>**252-448-6091** | Name of Person(s) That Discriminated Against You<br>**1. Town of Trenton, NC**<br>**2. The Town Board of Trenton, NC** |
|---|---|---|
| Address<br>**P.O. Box 397**<br>**105 Cherry Street** | Location and Position of Person (If Known) | |
| City, State, Zip<br>**Trenton, NC 28585** | City, State, Zip | |

| Discrimination Because of: | [X] Race  [ ] Color  [ ] National Origin  [ ] Sex<br>[ ] Age  [ ] Disability  [ ] Retaliation | Date of Alleged Incident<br>**On-going** |
|---|---|---|

**Explain As Briefly And Clearly As Possible What Happened And How You Were Discriminated Against. Indicate Who Was Involved. Be Sure To Include How Other Persons Were Treated Differently Than You. Also Attach Any Written Material Pertaining To Your Case.**

The Town of Trenton and the Town Board are committing on-going discrimination against the black residents within the following five areas in Trenton, NC: Haiti Town, Monk Town, Spicey Quinn Land, Landfill Area, and Back Street Extension. These black areas request to be annexed into the Town of Trenton.

The black areas surround the Town of Trenton. The Town of Trenton has a majority of white residents, with only approximately 30 black residents.

I believe the black areas are being discriminated against because some of the areas do not have City sewage, curbs, gutters, sidewalks, or storm drainage.

In addition, the Town Board does not have any black members, although several requests have been made.

| Signature<br>*Daniel J Willis* | Date<br>**7/5/2011** |
|---|---|

EXHIBIT # 911

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

CASE NO: 4:99-CV-4-H(3)

D. JOHNSON WILLIS, et al.,      )
                                )
                    Plaintiffs, )
                                )
            vs.                 )
                                )          AFFIDAVIT OF
TOWN OF TRENTON, et al.,        )       CHARLES C. JONES, JR.
                                )
                    Defendants. )
                                )

I, CHARLES C. JONES, JR., after being duly sworn, depose and say:

1.      I am over the age of eighteen and am a resident of the Town of Trenton, North Carolina.

2.      That I serve as Councilman to the Town Board of Trenton, and have served at this capacity for _15_ years.

3.      That the Town Board of Trenton does not endorse, condone or support racism in any shape, form or manner.

4.      That the Town Board of Trenton does not have a policy or zoning ordinance which supports racism, regarding the annexation of the black communities of Haiti, Monktown and Spicey Quinn.

5.    That the Town of Trenton has never confessed to any acts of racism in the administration of its duties to its citizens and residents.

This the 19th day of April, 1999.

_____
CHARLES C. JONES, JR.

Sworn to and subscribed before me
this the 19th day of April, 1999.

_____
Notary Public

My commission expires: _July 5, 2003_

Exhibit # 1201



# UNITED STATES ENVIRONMENTAL PROTECTION AGENCY

## WASHINGTON, D.C. 20460

EXTERNAL CIVIL RIGHTS COMPLIANCE OFFICE
OFFICE OF GENERAL COUNSEL

March 5, 2021

**In Reply Refer to:**
EPA Complaint No. 01R-21-R

Mr. Daniel J. Willis
Jones County Improvement Association, Inc.
105 Cherry Street
Trenton, NC 28585

**Re: Acknowledgement of Administrative Complaint**

Dear Mr. Willis:

This letter is to notify you that the U.S. Environmental Protection Agency (EPA), External Civil Rights Compliance Office (ECRCO), received your correspondence on March 3, 2021 involving the Town of Trenton, NC alleging discrimination based on race in violation of Title VI of the Civil Rights Act of 1964.

ECRCO is responsible for processing and resolving complaints alleging discrimination by programs or activities that receive financial assistance from the EPA. ECRCO will review the correspondence in light of EPA's nondiscrimination regulation to determine whether it is a complaint that falls within ECRCO's jurisdiction. Once this jurisdictional review is completed, ECRCO will notify you as to whether it will accept the complaint for investigation, or reject, or refer the complaint to another Federal agency.

Please be advised that, if your complaint is accepted for investigation, a copy of the complaint will be shared with the Recipient, consistent with 40 C.F.R. § 7.120(e). ECRCO will release the complaint with appropriate redactions consistent with the Freedom of Information Act (FOIA) and the Privacy Act) and will only release identifying information to the extent necessary to comply with 40 C.F.R. Parts 5 and 7. [1]

---

[1] Freedom of Information Act, 5 U.S.C. § 552(b)(6) and (7)(c) and the Privacy Act of 1974, 5 U.S.C. § 552a.

EXHIBIT A

## Town Minutes

We reviewed town minutes since 1941. Evidently, a fire destroyed earlier town records. This is a shame, because we found a number of interesting items in the minutes. Below is a summary list.

August 14, 1941. Reference to bridge to Haiti.

Aug. 28, 1943. Bridge to Haiti built by town, even though beyond corporate limits.

Sept. 28, 1943. Town pays for sewer connection for Mrs. J.O. Moore who apparently lived outside the corporate limits. She apparently financed the cost for 2 years.

October 10, 1949. Town passes ordinance: "persons of color and/or persons of undesirable character and reputation be prohibited from purchasing lands within the residential area in said Town, whether said property contemplated to be purchased be for business or residential use."

March 6, 1951. Reference to Town Charter issued in 1911 relative to town limits. Discussed need for town survey.

May 16, 1952. Extended sewage and drainage to Mr. R.H. Durham. Town extended town limits to include Mr. Durham, but at his expense.

May 11, 1953. Past procedure re: cemetery lots to contin. (note: town cemetery is whites only; no info. re: whether blacks have ever tried to purchase lots; black cemetery is, I believe, privately owned)

May 28, 1953. An engineer to prepare plot for Powell Bill purposes.

July 14, 1953. The report of Powell Bill, maps, etc. inspected and ordered filed.

Sept. 8, 1953. Ms. E.L. Nobles requested that the town install a sewer line on King St. N. of Jones to River. The town will survey the st. to determine whether to install line. Agmt. between town and hwy fund.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

| | |
|---|---|
| DANIEL J. WILLIS<br>Plaintiff,<br><br>v.<br><br>JONES COUNTY BOARD OF<br>EDUCATION and NORTH CAROLINA<br>STATE BOARD OF ELECTIONS and/or<br>their successors,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**JUDGMENT**

No. 4:20-CV-230-FL

**Decision by Court.**

This action came before the Honorable Louise W. Flanagan, United States District Judge, for consideration of defendant's motion to dismiss.

**IT IS ORDERED, ADJUDGED AND DECREED** in accordance with the court's order entered June 3, 2021, and for the reasons set forth more specifically therein, the court DISMISSES the instant action on the basis of the court's pre-filing injunction. In addition, and in the alternative, defendant NCSBE's motion to dismiss is GRANTED, and plaintiff's claims against defendant NCSBE are DISMISSED for failure to state a claim upon which relief can be granted. Further, the court adheres to its April 14, 2021, order dismissing claims against defendant Jones County Board of Elections pursuant to Rule 4(m). Accordingly, plaintiff's action is DISMISSED as to all defendants.

**This Judgment Filed and Entered on June 3, 2021, and Copies To:**
Daniel J. Willis  (via US Mail) 105 Cherry Street, Trenton, NC 28585
Paul M. Cox / Terence Steed (via CM/ECF Notice of Electronic Filing)

June 3, 2021                           PETER A. MOORE, JR., CLERK

                                        /s/ Sandra K. Collins
                                        (By) Sandra K. Collins, Deputy Clerk

I certify the foregoing to be a true and correct
copy of the original.
Peter A. Moore, Jr., Clerk
United States District Court
Eastern District of North Carolina

By _Collins_ 6/3/21
         Deputy Clerk



UNITED STATES ENVIRONMENTAL PROTECTION AGENCY

REGION IV

345 COURTLAND STREET, N.E.
ATLANTA, GEORGIA 30365

MAY 04 1992

Mr. Horace B. Phillips, Chairman
Jones County Board of Commissioners, Jones County
P.O. Box 266
Market Street at Jones Street
Trenton, North Carolina 28585

*EPA Complaint #*
*01R-21-R*

RE: C370442-03 and C370089-01
City of Trenton and Jones County
Title VI, Discrimination Complaint

Dear Commissioner Phillips:

As you are aware, on December 13, 1990, Mr. D. Johnson Willis, Chairman of the Board, Jones County Improvement Association, filed a discrimination complaint with the U.S. Department of Justice, against the City of Trenton and Jones County alleging, in pertinent part, that a predominantly black neighborhood (outside of the city limits) was denied sewer service because of race in violation of Title VI of the Civil Rights Act of 1964.

The U.S. Department of Justice referred this matter to the Regional Director of Civil Rights. The U.S. EPA Regional Office has investigated these allegations and has found the following:

o   On October 6, 1975 the Town of Trenton, North Carolina received EPA Grant No. C370442-01 for $10,500 to prepare the 201 Facilities Plan for the planning area that included Trenton and parts of Jones County.

o   On September 29, 1978, the Town of Trenton, North Carolina received EPA Grant No. C370442-03 for $264,789 to construct a 0.07MGD activated sludge wastewater treatment plant. This plant was designed to serve 74% of the year 2000 planning area population of 960.

o   On September 29, 1988, Jones County, North Carolina received EPA Grant No. 370789-01 for $112,893 to amend the 1978 201 Facilities Plan and to construct the force main and pump stations to transmit the wastewater from the high school, the community college, the proposed Civic Center and the County Administration building to the Trenton Wastewater Treatment Plant.

o   On February 25, 1991, in response to the discrimination claim, the Regional Director of Civil Rights at EPA directed the State of North Carolina to re-open and

review the Trenton/Jones County 201 Facilities Plan to
address 5 minority areas in Jones County. These five
unincorporated communities are locally know as Haiti,
Spicey Quinn, Monktown, Backstreet, and Landfill.

The revised 201 Facilities Plan of July 1991, concluded that there
was insufficient need to warrant the costs associated with
providing centralized sewer service to the Haiti, Backstreet and
Landfill communities as the existing septic tank disposal systems
functioned adequately. However, the study revealed that improved
sewage collection and/or disposal methods were needed in the Spicey
Quinn and Monktown communities.

Representatives of EPA and the State of North Carolina Department
of Environment, Health and Natural Resources attended a public
meeting on the revised 201 Facilities Plan on July 18, 1991. A
majority of the Jones County minority residents present were in
favor of a sewer project for all five communities and expressed
doubts as to the accuracy of the study's findings with regard to
Haiti, Backstreet and Landfill communities.

As you are undoubtably aware, in order to be in compliance with EPA
grant regulations, including Title VI, you are required to assess
the needs of everyone in the planning area. Your assessment
revealed that two communities within the planning area, Spicey
Quinn and Monktown, required sewer services. Accordingly, you
should take immediate steps to sewer those areas identified in the
revised 201 facilities plan of 1991. The revised 201 Facilities
Plan stated that "funding within Jones County and the Town of
Trenton are severely limited." While this fact does not relieve
you of your obligations under EPA grant regulations or Title VI,
we would like to inform you that as grantees you can apply to the
State of North Carolina for a SRF Loan, or to HUD, EDA or the
Farmers Home Administration for fund availability. In fact, the
Farmers Home Administration informed EPA that grant and loan funds
for this type of work are currently available.

Please advise this office no later than May 29, 1992, of actions
you have taken to satisfy the legal requirements of this grant.
If no further action is taken EPA will consider annulment of grant
No. C370789-01 and will seek to recoup its funds. Your prompt
attention to this important matter is appreciated.

Sincerely yours,

Donald J. Guinyard
Assistant Regional Administrator
  for Policy and Management

*Exhibit # 9990*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

CASE NO. 4:20-CV-230-FL

FILED

DEC 2 1 2020

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

DANIEL J. WILLIS
    Plaintiff

  v

> **Motion DENIED.**
>
> This the _22_ day of _December_, 20 _20_.
>
> /s/Louise W. Flanagan, U.S. District Judge

JONES COUNTY BOARD OF ELECTIONS, ET. AL.
    Defendants

*motion*

## SECOND AMENDMENT FED R CIVIL P 15 [C]

There are too many people hurting for the court to deny, without clearly and adequately, viewing, and/or, reviewing [not cursory], any and all evidence involved on 12/15/2020, as to irregularities in Case No. 4:20-CV-230-FL.

Here, finding new expedite orders for said "CV" Cases or others "MC" Cases, embarking from 1995 – 2020, without success [before Judge M.J. Howard], on new or turnaround ventures that entails discrimination, and/or, Civil Rights, and where the court knows, for a fact, that plaintiff is correct, without a doubt, but offers the potential for the above cases, in its entirety, as to its future hearings, "nil and none" [proof].

The proving that the plaintiff [pro se] before this court is the very same or alleged to be, where the evidence recognizes the plaintiff as the same person whom it saw as the same person who filed and paid for said civil procedures, where amendment should be allowed and where the plaintiff sought that his "factual and legal "basis was joined so closely related in said activities that the institution of this action against the plaintiff, who served notice of litigation "at-large election," and hence the order should relate back.

The text order regarding motion to expedite, where plaintiff fails to offer either a factual or legal basis for expedited proceedings in this matter. This transaction was entered on 12/15/2020 at 3:43 PM EST. and filed on 12/15/2020, and accordingly, the motion to expedite was denied on 12/15/2020 between 3:43 PM EST and 5 o'clock PM EST, [not enough time] to deny clearly and adequately expedited proceedings. See, Exhibit marked as # 1.